SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

UNIVEST, INC., et al., Defendants.

No. 75 C 1488.

United States District Court,
N. D. Illinois, E. D.

April 15, 1976.

Barry D. Goldman, Jeffrey I. Bernstein, Chicago, for plaintiff.

Joel J. Bellows, Elliott Heidelberger, Charles B. Bernstein, Chicago, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT ORDER

AUSTIN, District Judge.

At the close of the evidence offered by the Plaintiff at trial, Defendants moved, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for a directed verdict. After careful consideration of the testimony and exhibits presented, the Court makes the following findings of fact and conclusions of law and must grant the Defendants' motion.

### FINDINGS OF FACT

1. The Securities and Exchange Commission filed the complaint in this suit on May 9, 1975, seeking to enjoin alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934.

2. Applicable provisions of the Commodity Futures Trading Commission Act of 1974 became effective on April 21, 1975.

3. Defendant Univest was engaged in the business of selling options on silver futures contracts traded on the Chicago Board of Trade, but ceased such business in April 1974.

4. When Univest ceased operations, Defendants Chalupa and Wynn met with its customers, sometimes singly and sometimes in small groups, to inform them that the firm was in serious financial trouble. Financial statements distributed to the customers showed less than $93,000 in available cash and $528,000 in liabilities.

5. All the customers agreed to take a pro rata share of the remaining cash, and all funds indicated as available for distribution were in fact so distributed.

6. To cover the balance of the customers' investments remaining after the pro rata distribution, Defendants Chalupa and Wynn caused Univest to issue to the customers approximately 65 promissory notes with a total amount of approximately $150,000. A few customers received notes which also included a portion of the profit they had realized from previous options transactions and then reinvested.

7. The periods of the notes varied from three months to one year. None bore any interest.

8. In exchange for the pro rata shares of cash and the promissory notes, the customers agreed to a full release running to Defendants.

### CONCLUSIONS OF LAW

1. The Commodity Futures Trading Commission Act provides that the Commission shall have "exclusive jurisdiction with respect to accounts, agreements . . ., and transactions involving contracts of sale of a commodity for future delivery . . . ." 7 U.S.C. § 2 (Pkt.Pt.1976). The promissory notes and transactions at issue here are "agreements and transactions involving contracts of sale of a commodity for future delivery." Because the Commodity Futures Trading Commission has exclusive jurisdiction over such matters, and because the SEC's complaint here was filed after the effective date of the Commodity Futures Act, the SEC was not authorized by law to bring this suit.

2. Even if the Commodities Futures Trading Commission Act did not preclude the SEC from bringing this suit, the promissory notes here are not "securities" as defined in Section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), and Section 3(a)(10) of the Se-

curities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). They are not, therefore, subject to the requirements of those Acts. In *S.E.C. v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court stated that a security exists where "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301, 66 S.Ct. at 1104, 90 L.Ed. at 1251. In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court reaffirmed the *Howey* test and emphasized its "expectation of profit" requirement:

> The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits, the Court has meant either capital appreciation resulting from the development of the initial investment . . . or a participation in earnings resulting from the use of investors' funds . . . . In such cases the investor is "attracted solely by the prospects of a return" on his investment. *Howey, supra*, 328 U.S. at 300, 66 S.Ct. 1100.

421 U.S. at 852, 95 S.Ct. at 2060, 44 L.Ed.2d at 632.

Although I agree that the definition of a security "embodies a flexible rather than a static principle," *S.E.C. v. Howey, supra*, 328 U.S. at 299, 66 S.Ct. at 1103, 90 L.Ed. at 1250, and that in searching for the meaning "form should be disregarded for substance and the emphasis should be on economic reality," *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564, 569 (1967), there is no question that the non-inter-est-bearing promissory notes here do not lie within the limits of the *Howey-United Housing* concept. The Univest customers accepted the notes as evidence of a liquidated debt which had arisen out of the unsuccessful operation of Univest's business. The customers were not attracted by the prospects of a return, nor did they reasonably—or even unreasonably—expect profits to be derived from the notes.

In *S.E.C. v. Continental Commodities Corp.*, 497 F.2d 516 (5th Cir. 1974), a case similar to this one, Continental had issued notes in partial reimbursement to its customers upon the suspension of trading in commodities futures options. The court found an expectation of profits and therefore the existence of securities because the notes "were issued to rejuvenate and not to liquidate" the enterprise. 497 F.2d at 527. Continental's customers "accepted the notes with the hope of realizing a greater return on their investments." *Id.* Univest, in contrast, was not seeking to rejuvenate itself. It distributed all of its available cash to its customers, settled its liability to them, and terminated its operations. Univest issued the notes and its customers accepted them with no hope that the firm would be resuscitated thereby and no hope that the customers might ultimately realize a return on their investments. The *Continental* case, therefore, is clearly distinguishable from this one.

I hold (1) that the · Commodities Exchange Commission Act of 1974 stripped the S.E.C. of authority to bring this suit, and (2) that the promissory notes issued by Univest were not securities as defined in the Securities Acts.

Accordingly, Defendant's motion for a directed verdict is granted.

Case dismissed with prejudice.